UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES C. BARNETTE,<br><br>                    Plaintiff,<br><br>v.<br><br>MAYO CLINIC ROCHESTER,<br><br>                    Defendant. | Civil No. 05-2938 (JRT/FLN)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

David B. Ketroser, **DAVID B. KETROSER, MD, JD**, P.O. Box 427, Hopkins, MN 55343, for plaintiff.

Paul B. Klaas and Bartholomew B. Torvik, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402; and Matthew J. Hanzel, **MAYO CLINIC LEGAL DEPARTMENT**, 200 First Street Southwest, Rochester, MN 55905, for defendant.

Plaintiff James C. Barnette ("Barnette") brings this lawsuit against defendant Mayo Clinic Rochester ("Mayo"), alleging that Mayo committed medical malpractice. Mayo moves to dismiss, arguing that Barnette's claims are barred by the statute of limitations. For the following reasons, the Court grants in part and denies in part Mayo's motion to dismiss.

## BACKGROUND

On December 17, 2001, Barnette underwent lower back surgery at the Mayo Clinic in Rochester, Minnesota. The surgery lasted nearly nine hours. In his complaint, Barnette claims that, "almost immediately" after the surgery, he began to feel pain,

weakness, and numbness in his hand and arm, and that he reported this to Mayo staff at that time. Barnette also alleges that despite his complaints, no one at Mayo undertook any evaluation or treatment of this problem beyond documenting its presence in Barnette's medical file. Barnette was discharged on December 20, 2001.

Barnette claims that his condition deteriorated. On June 13, 2002, he was evaluated at Mayo's Hand Clinic, and was documented as having profound ulnar weakness. Barnette contends that his injury is permanent, and that he continues to suffer pain, weakness, and numbness in his hand and arm.

Barnette asserts that the cause of his injury is that he was negligently positioned during the lower back surgery, such that his ulnar nerves were not properly protected. Barnette further claims that although the negligent positioning is the cause of his injury, his injury could have been mitigated, though not undone, if Mayo doctors had properly diagnosed the problem within the three days following his surgery, while he remained at Mayo. He commenced this lawsuit against Mayo on December 20, 2005.

## ANALYSIS

### I. Standard of Review

In a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff and presumes all facts alleged in the complaint to be true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). The Court may dismiss a claim only where the plaintiff cannot

prove any set of facts in support of his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002).

## II.     Mayo's Motion to Dismiss

Mayo moves to dismiss Barnette's claims, arguing that his claims are barred by the statute of limitations.  Medical malpractice actions in Minnesota must be commenced within four years after the cause of action accrues.  Minn. Stat. § 541.076(b).  Under the "termination of treatment" rule, a cause of action for medical malpractice accrues when the treatment ceases.  *Haberle v. Buchwald*, 480 N.W.2d 351, 354 (Minn. Ct. App. 1992) (citing *Schmitt v. Esser*, 226 N.W. 196, 197 (1929)).  A practical reason for the termination of treatment rule is that actionable treatment does not ordinarily consist of a single act or, even if it does, it is difficult to determine the precise time of its occurrence.  *Bruns v. Regents of Univ. of Minn.*, 1991 WL 119534, at *1 (Minn. Ct. App. Jul. 9, 1991).  The termination of treatment rule is also based on the policy reason that the patient must be able to rely on his or her physician in the course of treatment.  *Haberle*, 480 N.W.2d at 355.

However, under the "single act exception" to the termination of treatment rule, the cause of action accrues at the time of the allegedly negligent act.  *Id.* (quoting *Schmitt*, 226 N.W. at 197 ("It is true that if there be but a single act of malpractice, subsequent time and effort merely to remedy or cure that act could not toll the running of the statute.")).  Four elements must be met before the single act exception applies: (1) there must be a single act of negligence, (2) which is complete at a precise time, (3) which no

continued course of treatment can either cure or relieve, and (4) the plaintiff must be actually aware of the facts upon which the claim is based. *Id.* (citing *Crenshaw v. St. Paul Ramsey Med. Ctr.*, 379 N.W.2d 720, 721 (Minn. Ct. App. 1986)). With respect to the third element, the Minnesota Court of Appeals has explained that "[t]reatment to mitigate the damages caused by an alleged negligent act does not make the single act exception to the termination of treatment rule inapplicable," noting that "to hold otherwise would virtually eliminate the single act exception." *Bruns v. Regents of University of Minnesota*, 1991 WL 119534, *2 (Minn. Ct. App. 1991).

To determine whether Barnette's action is barred by the statute of limitations, the Court must first determine when his cause of action accrued. In Barnette's amended complaint, he asserts two claims of medical malpractice. In the first claim, Barnette alleges that Mayo committed malpractice by negligently positioning him during the surgery, such that his hand was injured. In the second claim, Barnette alleges that Mayo committed a separate act of malpractice by negligently misdiagnosing the injury to his hand after the surgery. The Court addresses these claims separately.

    **A.**    **Negligent Positioning**

Presuming all the facts alleged in the complaint as true, as the Court must on a motion to dismiss, the Court finds that the single act exception applies to Barnette's claim for negligent positioning, and that his cause of action accrued on December 17, 2001, the date of his surgery. First, Barnette's claim is based on an identifiable single act of alleged negligence: he alleges he was negligently positioned during surgery performed

on December 17, 2001. Second, the alleged act of negligence was complete at a precise time, upon termination of the December 17, 2001 surgery. Third, no continued course of treatment could have cured or relieved the injury to Barnette's hand allegedly caused by the negligent positioning. Although Barnette argues that this element of the single act exception is not met because he was subsequently treated for his injured hand, he also claims that once the alleged negligent positioning occurred, it could not have been undone, and that any subsequent treatment could, at best, have mitigated the injury that occurred during the surgery. Treatment to mitigate the damages caused by the alleged negligent positioning "does not make the single act exception to the termination of treatment rule inapplicable." *Bruns*, 1991 WL 119534, at *2. Therefore, the third element appears to be met. Finally, Barnette alleges in his complaint that he was actually aware of the facts on which his claim is based "immediately after the surgery," which occurred on December 17, 2001. Because all four elements of the single act exception are present in this case, the single act exception applies to Barnette's claims, and his cause of action for medical malpractice based on negligent positioning during surgery accrued on December 17, 2001.

Barnette did not commence his lawsuit until December 20, 2005, over four years after the date his cause of action accrued. Because Barnette did not commence his action within the statute of limitations, the Court finds that his claim for medical malpractice based on negligent positioning is barred by the statute of limitations.

### B. Negligent Misdiagnosis

With respect to his negligent misdiagnosis claim, Barnette alleges that he complained about his hand to Mayo medical personnel after the surgery, while he remained hospitalized. Barnette further asserts that, despite his complaints, Mayo failed to correctly diagnose the injury, and that if Mayo had correctly diagnosed the injury to his hand, much of the injury and damage he has suffered could have been avoided. The surgery occurred on December 17, 2001, but Barnette was not discharged until December 20, 2001.

Under Minnesota law, medical malpractice actions based on a failure to diagnose or on a misdiagnosis generally accrue at the time of the misdiagnosis. *See Molloy v. Meier*, 679 N.W.2d 711, 722 (Minn. 2004). The question facing the Court, therefore, is the time the misdiagnosis occurred. Barnette alleges that the misdiagnosis occurred while he was hospitalized at Mayo, up to and including December 20, 2001, the date when he was discharged. On the record before the Court on this motion to dismiss, the Court has no basis to question the assertion that the misdiagnosis occurred up until the time of Barnette's discharge. Because the time of discharge is established in the record as occurring on December 20, 2001,[1] accordingly the Court finds, for the purposes of this motion, that Barnette's cause of action accrued on December 20, 2001.

---

[1] The Court encourages the parties in discovery to develop a full factual record in the case, especially with respect to the issue of when the last act of misdiagnosis allegedly occurred.

Because Barnette commenced his lawsuit on December 20, 2005, the claim falls within the applicable statute of limitations and is not time-barred. Therefore, the Court denies Mayo's motion to dismiss Barnette's claim for negligent misdiagnosis.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion to Dismiss [Docket No. 10] is **GRANTED in part** and **DENIED in part** as follows:

1.   Defendant's motion to dismiss plaintiff's claim for medical malpractice based on negligent positioning is **GRANTED**, and that claim is **DISMISSED WITH PREJUDICE**;

2.   Defendant's Motion to Dismiss [Docket No. 10] is in all other respects **DENIED**.

DATED:   August 4, 2006                          s/ John R. Tunheim
at Minneapolis, Minnesota.                   JOHN R. TUNHEIM
                                                   United States District Judge